# United States Court of Appeals
# for the Federal Circuit

_____

**IN RE STEVE MORSA**

_____

2012-1609

_____

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences in Serial No. 09/832,440.

_____

Decided: April 5, 2013

_____

STEVE MORSA, of Thousand Oaks, California, pro se.

RAYMOND T. CHEN, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia. With him on the brief were JOSEPH G. PICCOLO and COKE M. STEWART, Associate Solicitors.

_____

Before RADER, *Chief Judge,* LOURIE, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Mr. Steven Morsa ("Morsa") appeals the decision of the Board of Patent Appeals and Interferences ("Board") affirming the rejection of claims 181, 184, 188-203, 206, 210-25, 228, 232-47, 250, 254-68, 271, and 272. Substantial evidence supports the Board's factual determinations,

and we agree with the Board's ultimate legal conclusion that claims 181, 184, 188-203, 206, 210-25, 228, 232-47, 250, and 254-68 would have been obvious in light of the prior art. The Board performed an incorrect enablement analysis, however, when it determined that claims 271 and 272 were anticipated. Therefore, we *affirm in part and vacate in part and remand.*

BACKGROUND

A. Morsa's Patent Application

On April 12, 2001, sole inventor Morsa submitted utility patent application No. 60/211228 ("the '228 application") entitled "Method and Apparatus for the Furnishing of Benefits Information and Benefits." The '228 application discloses both a method and an apparatus for receiving a benefit information request from a user, searching a benefit information database for benefits matching the request, and then returning benefit information to the user. In the specification, Morsa defines benefits as any "'things' of value" given away to target entities. J.A. 1850. Specifically, Morsa claimed in claim 271: [1]

A benefit information match mechanism comprising:

storing a plurality of benefit registrations on at least one physical memory device;

receiving via at least one data transmission device a benefit request from a benefit desiring seeker;

---

[1] The parties dispute whether this claim is actually representative and we make no determination on that issue. Claim 271, however, serves our purpose in generally describing the invention claimed in the '228 application.

resolving said benefit request against said benefit registrations to determine one or more matching said benefit registrations;

automatically providing to at least one data receiving device benefit results for said benefit requesting seeker;

wherein said match mechanism is operated at least in part via a computer compatible network.

J.A. 298

## B. The Prior Art

The examiner at the United States Patent and Trademark Office ("PTO") rejected Morsa's various claims as unpatentable over one piece of prior art, a publication entitled "Peter Martin Associates Press Release" ("PMA"). J.A. 616. Published on September 27, 1999, the PMA announced the release of "HelpWorks, Web Edition," a new product that allows caseworkers and consumers to "use the Web to screen themselves for benefits, services, health risks, or anything else an agency wishes to implement via its eligibility library." *Id.* In paragraph 3, the PMA describes Helpworks, Web Edition as:

a state-of-the art software program designed to help maximize the benefits and services that consumers receive from public and private agencies. It can be configured to evaluate any or all benefits and programs required – Federal, State and/or local.

*Id.* at 616-17.

In a January 18, 2007 Non-Final Rejection, the examiner determined that this language in the PMA discloses a system, method, computer-readable code, or mechanism to allow individuals to make use of a variety of benefits from multiple benefit providers. The PMA further states that:

> HelpWorks Web Editions supports both a professionally directed deployment model – in which end users are professional caseworkers, [and] a self-service model in which consumers use the Web to screen themselves for benefits, services, health risks, or anything else an agency wishes to implement via its eligibility library.
>
> The power behind this unprecedented flexibility in application and access is PMA's newly released *Expert Eligibility Server (EES)* technology. The EES engine allows an agency to utilize HelpWorks – Web Edition as well as other applications that will leverage this dynamic technology. With EES as the backbone, agencies can rapidly deploy eligibility solutions for touch-screen kiosks, interactive voice response systems, the Web and many other platforms.

*Id.* at 617. In the same January 18 Office Action, the examiner found that, through this language, the PMA discloses a system comprising: (1) a means for storing benefit information, benefit provider information, and benefit correlation information, i.e., "eligibility library" and "Expert Eligibility Server"; (2) a means for using an individual's provided data to search for benefits available to that individual, i.e., "consumers use the Web to screen themselves for benefits"; and (3) a means for generating a message for informing an individual of the applicable benefits, at least in part via a computer network, i.e., "Web enabled self-service model." Additionally, the examiner determined that, due to the Web enabled features of HelpWorks, Web Edition, some user data must be stored during the search process and that the results of the search are generated in real or substantially real time.

### C. Examiner Rejection and Board Decision

In a July 20, 2010 Non-Final Office Action, the examiner determined that the PMA anticipates claims 271 and 272 of the '228 application. He also determined that the PMA did not disclose certain features of Morsa's claims, such as certain types of user data used to search, some types of content returned to the user after a search, and how users would pay for the benefit matching service. The examiner reviewed these differences and determined that the differences are such that the invention as a whole was obvious in light of the PMA. Accordingly, the examiner rejected claims 181, 184, 188-203, 206, 210-25, 228, 232-47, 250, and 254-68 as obvious. Morsa appealed this rejection to the Board.

Before the Board, Morsa argued that the PMA is not valid prior art because, although the PMA is dated September 27, 1999, it could not have been published until after his application date of April 12, 2000. As evidence of this, he pointed to: (1) a later publication that stated that HelpWorks, Web Edition launched in 2001 and not 1999; (2) the PMA publishing website's terms of use which stated that the company will not be held liable for inaccuracies; and (3) a trademark registration for HelpWorks, Web Edition that stated that the mark was first used in commerce in 2001. He argued that these facts indicate that the publication date of the PMA is of questionable accuracy. He also claimed that the discrepancy between the various sources can be explained because the PMA disclosed only the operation of HelpWorks and not HelpWorks, Web Edition.

Next, Morsa argued that the PMA is not enabling. Specifically, Morsa argued that: (1) the PMA was not enabling on its face; and (2) the PMA lacked specific disclosures of the structural components and features of Helpworks, Web Edition, how these features and components were integrated together, and the process and steps

through which the system progressed. In support of his arguments, Morsa posed a number of specific and pointed questions regarding the absence of detail in the PMA, cited to our case law discussing the nature of disclosure required before a reference can be deemed enabling, and pointed out reasons why one could not produce or practice the claimed invention based solely on the reading of the PMA. Morsa bolstered his argument by noting that the examiner relied primarily on two paragraphs of the PMA, totaling only 117 words, to determine what the prior art disclosed.

Finally, Morsa argued that the differences between his claims and the prior art, as determined by the examiner, are sufficient to support a finding of non-obviousness and that various objective factors weigh in favor of non-obviousness.

The Board concluded that the PMA reference was published before Morsa's application and that it was presumed enabling because Morsa failed to present any contrary evidence. The Board then sustained the examiner's anticipation rejections. Turning to the examiner's obviousness rejections, the Board concluded that Morsa had failed to present any evidence of objective factors for the Board to consider. The Board also examined the various alleged differences between Morsa's claims and the prior art and sustained the examiner's rejections on claims 181, 184, 188-92, 196, 197, 200-03, 206, 210-14, 218, 219, 222-25, 228, 232-36, 240, 241, 244-47, 250, 254-58, 262, 263, and 266-68. The Board allowed claims 193-95, 198, 199, 215-17, 220, 221, 237-39, 242, 243, 259-62, 264, and 265 as patentable over the PMA.

On July 14, 2011, Morsa filed a request for rehearing. The Board granted this request to the extent it concluded that its previous decision had used new grounds—that some of the differences between the prior art and the application related to non-functional descriptive materi-

al—for rejecting Morsa's claims. The request for rehearing was denied in all other respects. On February 2, 2012, Morsa filed a second request for rehearing. The Board denied that request. Morsa timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## STANDARD OF REVIEW

We review the Board's legal conclusions *de novo*. *In re Elsner,* 381 F.3d 1125, 1127 (Fed. Cir. 2000). We review the Board's factual findings for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Substantial evidence is less than the weight of the evidence but more than a mere scintilla of evidence. *Id.* at 1312 (citing *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229-30 (1938)). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

Enablement is a question of law based on underlying factual findings. *In re Antor Media Corp.,* 689 F.3d 1282, 1287 (Fed. Cir. 2012). "[A] prior art printed publication cited by an examiner is presumptively enabling barring any showing to the contrary by a patent applicant or patentee." *Id.* at 1288. When the applicant challenges enablement, however, the Board must "thoroughly revie[w]" all evidence and applicant argument to determine if the prior art reference is enabling. *Id.* at 1292. Anticipation is a question of fact reviewed for substantial evidence. *In re Gleave*, 560 F.3d 1331, 1334-35 (Fed. Cir. 2009). "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *In re Cyclo-*

*benzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068 (Fed. Cir. 2012) (citing *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, (1966)), *cert. denied*, 133 S. Ct. 933 (2013).

DISCUSSION

A.  The Publication Date of the Prior Art

Morsa continues to argue here on appeal that the PMA's publication date was after the date of his application. In particular, he points to several reasons why he believes the date listed on the prior art reference is suspect, including publications which state that HelpWorks, Web Edition was released on a different date, and the PMA publisher's terms of use document that denied liability for inaccurate information. The Board rejected these arguments, relying on the date disclosed in the publication itself. As this is a question of fact, we review the Board's decision for substantial evidence. Despite Morsa's arguments, the PMA is clearly labeled "Peter Martin Releases HelpWorks, Web Edition" and is dated September 27, 1999. J.A. 616. In this context, this provides substantial evidence for the Board to determine that the PMA was published before the critical date.

B.  Enablement and Anticipation

Morsa also renews his argument that the PMA is not enabling. In particular, he identifies specific defects in the PMA's disclosure, including a lack of operational structures and features of HelpWorks, Web Edition, the way those features and structures interact together, and the specific steps that HelpWorks, Web Edition uses to match users to benefits. Morsa also contends that a press release containing only 117 words of disclosure may be considered non-enabling on its face.

The Board rejected Morsa's arguments by stating that he failed to present any declarations or affidavits to establish the reference as not enabling and, citing *In re*

*Pearson*, 494 F.2d 1399, 1405 (CCPA 1974), concluded that argument alone cannot take the place of evidence. In its decision on Morsa's first request for rehearing, the Board relied on our decision in *Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1354 (Fed. Cir. 2003), holding that a patent cited as prior art is presumed enabling, for this same argument. The Director, in opposition here, updated this argument to reflect our holding in *In re Antor Media Corp.*, 689 F.3d 1282 (Fed. Cir. 2012).[2]

In *Antor*, we held that publications used as prior art by the PTO are presumed enabling. *Id.* at 1288. The court then examined whether Antor had succeeded in rebutting this presumption. *Id.* at 1289-93. In answering this question, the court examined the language of the prior art references, the declarations of Antor's experts, and Antor's attorney argument about the forward looking nature of the prior art's disclosure. *Id.* Although the court ultimately found Antor's argument to be without merit, our decision in *Antor* cannot be read to require an applicant to submit affidavits or declarations to challenge the enablement of prior art references.

The presumption in *Antor* is a procedural one—designed to put the burden on the applicant in the first instance to challenge cited prior art; the PTO need not come forward with evidence of enablement before it may

---

[2] Relying on *Amgen*, the Board decided Morsa's first request for rehearing on December 6, 2011, before this court's decision in *Antor*. The Director updated this argument to rely on *Antor* because *Antor* expands the presumption of enablement established in *Amgen* to include all printed publications, such as the PMA in this case. *See Antor*, 689 F.3d at 1288; *Amgen*, 314 F.3d at 1354.

rely upon a prior art reference as grounds for a rejection. *Id.* at 1288. Once an applicant makes a non-frivolous argument that cited prior art is not enabling, however, the examiner must address that challenge. While an applicant must generally do more than state an unsupported belief that a reference is not enabling, and may proffer affidavits or declarations in support of his position, we see no reason to require such submissions in all cases. When a reference appears to not be enabling on its face, a challenge may be lodged without resort to expert assistance. Here, Morsa identified specific, concrete reasons why he believed the short press release at issue was not enabling, and the Board and the examiner failed to address these arguments.

Despite the less than illuminating nature of the PMA, the Director also argues that the court should consider the PMA enabling because it is "at least as enabling" as Morsa's application. We are not persuaded.

First, an examiner must determine if prior art is enabling by asking whether a person of ordinary skill in the art could make or use the claimed invention without undue experimentation based on the disclosure *of that particular document.* *See* 35 U.S.C. § 112. While reference to the patent application is appropriate for purposes of determining what the claimed invention is, i.e., what falls within the scope of the claims, the anticipation exercise must assess the enabling nature of a prior art reference in light of the proposed claims. To the extent the Director argues that a head to head comparison between the disclosures in the documents is appropriate moreover, the PTO's description of the application is inaccurate. The level of detail and disclosure in the application far exceeds that in the PMA. Absent a finding that the application's disclosures are unrelated to the invention actually claimed, we cannot agree that the enabling nature of the two documents the PTO seeks to compare are, in fact, comparable.

Since both the Board and the examiner failed to engage in a proper enablement analysis, we vacate the finding of anticipation and remand claims 271 and 272 for further proceedings.

## C. Obviousness

Over the course of the prosecution history, the examiner and the Board made factual findings concerning the scope and content of the prior art, the differences between the prior art and the claims, and what one of skill in the art would understand from the disclosure in the prior art. Accordingly, we consider the Board's factual findings with deference and review the Board's legal conclusions of obviousness *de novo*.

In considering the PMA, the examiner made multiple factual findings relevant to our obviousness inquiry. Specifically, the examiner found that the PMA disclosed that HelpWorks, Web Edition is a configurable screening tool that searches for benefits that match user entered criteria. The examiner also found that one of ordinary skill in the art would have found it obvious to configure HelpWorks, Web Edition to use any kind of user data necessary to correctly match users to the benefits in the system's benefit library. The examiner further noted that the PMA discloses "an eligibility-screening tool based on entered criteria, and the amount of criteria entered would obviously equate to varying amounts of system matches (well known function of database correlation systems)." J.A. 211 The examiner concluded that HelpWorks, Web Edition must have stored data, as data storage is inherent to internet operations, and thus one of ordinary skill would use that stored data to search. While the examiner found no disclosure in the PMA relating to a method of paying for services, the examiner determined that the PMA disclosed that HelpWorks, Web Edition was available to the public and that "Official Notice is taken that charging for services provided to users was a well-known

form of business at the time the invention was made." J.A. 208. Based on our review of the PMA reference, we find that these factual findings are supported by substantial evidence.

The Board considered and rejected Morsa's arguments that objective factors weighed in favor of finding non-obviousness, stating that Morsa had failed to provide evidence of any of the objective factors. Our case law requires the Board to consider evidence of objective factors in any obviousness determination. *In re Sernaker*, 702 F.2d 989, 996 (Fed. Cir. 1983); *see also In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d at 1075. Here, however, Morsa simply listed various objective factors without any supporting evidence. The Board did not err in failing to consider evidence of objective factors when there was no evidence to consider.

Morsa argues claims 184, 200-03, 206, 222, 223-25, 228, 233, 236, 240, 241, 244-47, 250, and 266-68 were not obvious in light of the prior art because they claim benefit searches using types of user data not disclosed in the prior art. He also argues that claims 192, 196, 197, 214, 218, 219, 236, 240, 241, 258, 262, and 263 were not obvious in light of the prior art because, when a user searches, the claimed system returns content to the user that the prior art does not disclose. Finally, Morsa contends that claims 189, 211, 233, and 255 were not obvious in light of the prior art because they claim paying for benefit matching services using the benefits themselves. Having examined the factual findings made by the examiner, we agree with the Board's conclusion that it would have been obvious to one of ordinary skill in the art to arrive at the invention recited in claims 181, 184, 188-92, 196, 197, 200-03, 206, 210-14, 218, 219, 222-25, 228, 232-36, 240,

241, 244-47, 250, 254-58, 262, 263, and 266-68 using the PMA.[3]

CONCLUSION

We find the Board's factual determinations to be supported by substantial evidence, and we agree with its ultimate legal conclusions of obviousness. The Board, however, failed to engage in a proper enablement analysis. The Board's rejection of the various claims is therefore affirmed in part, vacated in part, and remanded.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

---

[3] The Board also relied on our holding in *In re Ngai*, 367 F.3d 1336, 1339 (Fed. Cir. 2004), as alternative grounds to determine that various differences between Morsa's claims and the prior art were non-functional descriptive material that could not distinguish the invention from the prior art. Because the examiner's factual findings are sufficient to support our conclusion that the claims were obvious, we need not address these alternative grounds.