# United States Court of Appeals for the Federal Circuit

---

**IN RE: STEVE MORSA,**
*Appellant*

---

2015-1107

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 09/832,440.

---

Decided: October 19, 2015

---

STEVE MORSA, Thousand Oaks, CA, pro se.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Michelle K. Lee. Also represented by THOMAS W. KRAUSE, JOSEPH GERARD PICCOLO, COKE STEWART.

---

Before PROST, *Chief Judge,* NEWMAN and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

PROST, *Chief Judge.*

This case presents the second time that this court reviews whether a publication entitled *Peter Martin Associates Press Release*, dated September 27, 1999 ("PMA"),

anticipates the claimed invention.[1]   In the original case, we remanded the claims to the United States Patent and Trademark Office, Patent Trial and Appeal Board ("Board") for the Board to consider Mr. Morsa's arguments concerning the enablement of the PMA reference. *In re Morsa*, 713 F.3d 104, 112 (Fed. Cir. 2013) ("*Morsa I*"). On remand, the Board determined that the reference was enabling. Appellant's Informal Br. App. 7. Mr. Morsa argues that the reference was not enabling. *See generally* Appellant's Informal Br. We disagree with Mr. Morsa and therefore affirm.

BACKGROUND

*Morsa I* provides detailed background information regarding this case, and thus we will only briefly set forth the relevant background information here. *Morsa I*, at 106. In *Morsa I*, we affirmed the Board's rejection of claims 181, 184, 188-203, 206, 210-25, 228, 232-47, 250, and 254-68 of utility patent application No. 60/211228, as substantial evidence supported the Board's ultimate legal conclusion that the claims were obvious in light of the prior art. *Id*. However, we vacated and remanded as to the Board's determination that claims 271[2] and 272 were

---

[1]   This case was submitted on the briefs.

[2]   Claim 271 is representative and reads:

A benefit information match mechanism comprising:

> storing a plurality of benefit registrations on at least one physical memory device; receiving via at least one data transmission device a benefit request from a benefit desiring seeker;

> resolving said benefit request against said benefit registrations to determine one or more matching said benefit registrations;

anticipated because the Board performed an incorrect enablement analysis. *Id.*

On remand, the Board determined that the anticipating reference, PMA, was enabled. In reaching its conclusion the Board looked to Mr. Morsa's specification to determine what a person of ordinary skill in this particular field of art would know. The Board found that the specification showed that only "ordinary" computer programming skills were needed to make and use the claimed invention. The Board then determined that the PMA disclosure combined with what a skilled computer artisan would know rendered the PMA reference enabling and therefore anticipatory of claims 271 and 272.

## DISCUSSION

We review the Board's legal conclusions de novo and the Board's factual decisions for substantial evidence. *In re DBC*, 545 F.3d 1373, 1377 (Fed. Cir. 2008). Whether a prior art reference is enabling is a question of law based on underlying factual findings. *Impax Labs., Inc. v. Aventis Pharm., Inc.*, 545 F.3d 1312, 1315 (Fed. Cir. 2008). Thus, this court reviews the Board's ultimate conclusion that a reference is or is not enabling without deference. *Id.*

Mr. Morsa contends that the Board did not conduct a proper enablement analysis regarding the PMA reference. His chief arguments are that the Board improperly erred by taking official notice in its enablement analysis of various facts and thus generating new grounds of rejec-

automatically providing to at least one data receiving device benefit results for said benefit requesting seeker;

wherein said match mechanism is operated at least in part via a computer compatible network.

tion; that the PMA is not enabling because it would have required a person of ordinary skill in the art to conduct undue experimentation; and that the PMA lacks several elements required by the claims.  We find none of these arguments persuasive.

The Board properly determined that the PMA reference is enabling.  Enablement of prior art requires that the reference teach a skilled artisan—at the time of filing—to make or carry out what it discloses in relation to the claimed invention without undue experimentation. *In re Antor Media Corp.*, 689 F.3d 1282, 1289-90 (Fed. Cir. 2012).  For a prior-art reference to be enabling, it need not enable the claim in its entirety, but instead the reference need only enable a single embodiment of the claim.  *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1381 (Fed. Cir. 2003).

We start first with the knowledge that a relevant skilled artisan would have in this case.  Here, the Board properly held that the application's specification made numerous admissions as to what one skilled in the art at the time of the invention would have known.  For example, the Board found that the specification discussed that central processing units and memories were "well known to those skilled in the art," that central processing units and memories were "used in conventional ways to process requests for benefit information in accordance with stored instructions," that the system as described in the patent "can be implemented by any programmer of ordinary skill in the art using commercially available development tools . . . ," and that "search routines for accomplishing this purpose are well within the knowledge of those of ordinary skill in the art."  Appellee's App. 38, 40.

We turn next to the piece of prior art that the examiner and the Board found to be anticipatory, PMA.  There are only four basic claim limitations found in claims 271 and 272; each of these limitations can be directly mapped

onto the PMA reference. First, the claims require the storage of benefit information. *Id.* at 48-49. Likewise, the PMA reference describes the storage of "benefits and services that consumers receive from public and private agencies" along with the storage of "benefits services, health risks, or anything else an agency wishes to implement via its eligibility library." *Id.* at 26-27. Second, the claims require that there be a request for benefits. *Id.* at 48-49. This correlates with the PMA's statement that "consumers use the web to screen themselves for benefits, services, health risks, or anything else an agency wishes to implement via its eligibility library." *Id.* at 27. Third, the claims require that a computer network match the request with benefits. *Id.* at 48-49. This maps onto the PMA's use of the internet. Fourth, and finally, the claims require that results be provided to the requester. As stated before, the PMA reference allows "consumers [to] use the Web to screen themselves for benefits, services, health risks, or anything else an agency wishes to implement via its eligibility library." *Id.* at 27. Considering that each limitation is found in the PMA reference, we agree with the Board that the PMA discloses Mr. Morsa's claims. Thus, considering that the PMA reference discloses each claim limitation, and that the application's specification indicates that a person of ordinary skill in the art is capable of programming the invention, the Board's conclusion that the PMA reference is enabling is correct.

Mr. Morsa's principal argument is that the statements made by the Board appearing before the enablement analysis show reversible error as they constitute undesignated new grounds of rejection. We disagree. These statements—such as the statement that database-searching is old and well known and thus the focus on the present application is not on searching databases generally, but on the specific type of data used and the specific searches performed—were merely descriptive. The

statements were not part of the Board's enablement analysis and were not necessary to the Board's conclusions. Thus, these statements do not constitute a new ground of rejection and do not undermine the Board's conclusions.

Mr. Morsa additionally argues that the information provided by PMA is not sufficient to make the claimed invention and thus would require undue experimentation. We disagree. As discussed above, the specification made clear that a skilled computer artisan would readily know how to use conventional computer equipment and how to program it; thus, only ordinary experimentation would be needed to make the claimed program.

Finally, we do not use portions of the patent specification as prior art, but instead affirm the Board's use of one section in the specification solely as it relates to the knowledge of a person of ordinary skill in the art. There is a crucial difference between using the patent's specification for filling in gaps in the prior art, and using it to determine the knowledge of a person of ordinary skill in the art. Here, the Board did only the latter. Mr. Morsa, amongst other things, admitted in the specification that the system as described in the patent "can be implemented by any programmer of ordinary skill . . . ," thus allowing him to avoid having to teach the public this very concept. Therefore, by using Mr. Morsa's admissions, the Board simply held him to the statements he made in attempting to procure the patent.

For the reasons stated above, we affirm the judgment of the Board as it pertains to the PMA being enabling. We have reviewed Appellant's remaining arguments and find them unpersuasive.

## AFFIRMED

### COSTS

Each party shall bear their own costs.

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: STEVE MORSA,**
*Appellant*

---

2015-1107

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 09/832,440.

---

NEWMAN, *Circuit Judge,* dissenting.

I write to attempt to stabilize the law of "anticipation," for the court confuses the laws of anticipation and obviousness, and the role of enablement as applied to prior art references.

"Anticipation" in patent law means that the claimed subject matter is not new; that is, that it was already known. To "anticipate" in patent law requires that a single reference contains all of the elements and limitations of the claim at issue, explicitly or inherently. If the single reference is not enabled with respect to the subject matter under examination, "anticipation" cannot be found; it is not permissible to go outside the single reference in order to find "anticipation," unlike the protocols by which references are combined to show "obviousness."

These simple rules have provided the foundation for examination of patentability; they have been explored and refined and applied without challenge to their foundation. This distinction between sections 102 and 103 of the

Patent Act should not now be blurred. This court should not ratify the shortcut the PTO Board took here. From this and other errors and imprecision, I respectfully dissent.

### The issue of anticipation was not waived

The Board's statement that Mr. Morsa waived the issue of anticipation before the Board is not comprehensible, for Mr. Morsa's appeal brief to the Board states:

> Independent claims **271-272 and 181, 203, 225, and 247** are neither anticipated nor rendered obvious by the <u>alleged</u> PMA . . . .

Board Brief 12 (emphasis in original). *In re Morsa*, 713 F.3d 104 (Fed. Cir. 2013) (*Morsa I*) included the issue of anticipation; that was the sole issue on remand, and now the subject of this appeal.

Several Morsa claims were allowed in the initial examination, and were not at issue in the prior appeal to this court. Some Morsa claims were rejected by the Board on the ground of obviousness, and in *Morsa I* this court affirmed those rejections.

### The two rejected claims

Claims 271 and 272 had been rejected by the Board on the ground of "anticipation" by a third person's press release. The press release was short on detail, and in *Morsa I* this court remanded for a determination of whether the disclosure in the press release was enabled. On remand, the Board reaffirmed its rejection for anticipation, and Mr. Morsa again appeals.

The claims demonstrate the issue, for the press release does not mention all of the steps and limitations of the claims:

> 271. A benefit information match mechanism comprising:

storing a plurality of benefit registrations on at least one physical memory device;

receiving via at least one data transmission device a benefit request from a benefit desiring seeker;

resolving said benefit request against said benefit registrations to determine one or more matching said benefit registrations;

automatically providing to at least one data receiving device benefit results for said benefit requesting seeker;

wherein said match mechanism is operated at least in part via a computer compatible network.

272. A method of generating a benefit result list in real or substantially real time in response to a benefit match request from a benefit seeker using a computer network, comprising:

maintaining at least one database stored in and/or on an article of manufacture including a plurality of benefit listings;

receiving a benefit match request transmitted from an article of manufacture from said seeker, said request including said seekers criteria;

identifying using a processing device those of said benefit listings having criteria which generate a match with said match request;

generating automatically a message to a receiving article of manufacture to inform said seeker via said computer network of those of said benefits which match said seekers criteria.

The Board recognized that some of the claim steps are not described in the press release. The Board solved this dilemma by taking what it called "Official Notice" of the missing subject matter. And my colleagues solve this dilemma by finding the missing subject matter in the Morsa specification by stating that since the specification

states that a person skilled in the art would know how to "implement" the claimed system, that person would have "knowledge" to fill the gaps in the prior art. However, we are directed to no disclosure in the prior art of all the claim elements and steps. "Anticipation" is not established in accordance with law.

### *"Official Notice" is not anticipation*

The Board took "Official Notice" that the claim steps missing from the press release must have been performed. However, the law of patent "anticipation" is not so permissive. The law "requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *SynQor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365, 1375 (Fed. Cir. 2013). This presence must be found as fact, and when missing elements are stated to be "necessarily present, or inherent, in the single anticipating reference," *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003), "the mere fact that a certain thing may result from a given set of circumstances is not sufficient to establish inherency." *Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999).

The Board's "Official Notice" of the existence of undisclosed steps and claim elements is not an acceptable substitute for examination and citations of prior art and reasoning, in the rigors and high stakes of innovation and patenting. The Board failed, for example, to show that the undisclosed features were inherently present in the database referred to in the cited press release. Instead, the Board took "Official Notice" of how "databases" function without showing that the database in the press release necessarily was the same as the database in the Morsa claims or even the same as "databases" generally. This is insufficient to establish either inherent description or inherent enablement of the explicitly claimed subject matter.

The majority compounds the Board's error by rewriting the claims to match the reference. Maj. Op. at 5. The press release does not say how the system operates, only the final result. The Board called it "Official Notice" of how databases work. Such an assumption is not prior art, and cannot be the basis of "anticipation."

### *The applicant's specification is not prior art*

An inventor's statement in the patent application that a particular step may be performed by procedures known to persons of skill in the field of computer programming does not place that step in the context in which the inventor used it into the prior art.

The panel majority fills the gaps in the press release by referring to Morsa's statement that various steps of his invention may be conducted by procedures known to persons of skill in computer-implemented methods. The issue on remand was not whether Morsa enabled his invention, indeed, that was not challenged by the PTO. However, Morsa's enablement of his invention does not enable the prior art press release, or fill gaps needed to anticipate the Morsa system. "The standard for what constitutes proper enablement of a prior art reference for purposes of anticipation under section 102, however, differs from the enablement standard under section 112" whereby the claimed invention must be enabled by the disclosure in the specification. *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1325 (Fed. Cir. 2005).

### *Enablement of the prior art must come from prior art*

"[A] patent claim 'cannot be anticipated by a prior art reference if the allegedly anticipatory disclosures cited as prior art are not enabled.'" *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1337 (Fed. Cir. 2010) (quoting *Amgen Inc. v. Hoechst Marion Roussel*, Inc., 314 F.3d 1313, 1354 (Fed. Cir. 2003)).

The question on the *Morsa I* remand was whether the subject matter of the press release is enabled by the description in the press release: "[The] reference must . . . enable one skilled in the art to make the anticipating subject matter." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996). My colleagues use the information in the Morsa specification to enable the press release. That is improper. The gaps in the prior art cannot be filled by the invention at issue; it is improper to transfer Mr. Morsa's teachings into the press release in order to enable the press release.

These flaws confound the laws of anticipation and obviousness and enablement, defying precedent, and adding to the complexities of patenting. The issues should be decided on the correct law. Thus I respectfully dissent.