NEWMAN, Circuit Judge,
concurring in part and dissenting in part.
I concur in the judgment with respect to claims 1-6. As to claims 7-12, I would sustain the judgment of the PTO Board. Thus I respectfully dissent from the reversal of the PTO’s judgment as to claims 7-12.

Claims 1-6: Anticipation

I agree that the Board correctly applied the law of inherent anticipation, and that the claims were appropriately found to be invalid, I remark however, that the Board erred in treating part of the claims’ recitation of the claimed subject matter as a “preamble”. Claims 1-12 all commence as follows:
A medical implant comprising an irradiated ultrahigh molecular weight polyethylene [UHMWPE] having a weight average molecular weight greater than 400,000 and a solubility of less than 80.9% in trichlorobenzene.
The Board held, and the panel majority agrees, that the words “medical implant” are not a limitation of the claim, but a mere “preamble” of no limitation effect. That is incorrect. First, the claim is not written in preamble form, but is explicitly directed to a medical implant, not to a polymer of varied uses whereby the product identified in the “preamble” may not be limiting of either validity or infringement. For example, were the accused irradiated polyethylene used as a street lamp, it would be ridiculous for Howmedi-ca to accuse that product of infringement of these claims, even ere all of the listed properties identical. The claims are limited to medical implants as much as they are limited by the molecular weight and solubility.
Thus I do not join the court’s ruling that “medical implant” is not a claim limitation and is irrelevant to the determination of anticipation. I do not share the court’s theory that claims 1-12 apply to any polyethylene having the physical and chemical characteristics stated in the claim, no matter how remote the product is from being a medical implant.
However, that does not save claims 1-6 here, because the Lue thesis mentions medical prosthetic uses of the irradiated polyethylene. Lue states:
Recently, UHMW-PE is also being used extensively for prosthetic body implants. The low coefficient of friction, high wear resistance, and toughness have brought UHMW-PE’s use in artificial hips, fingers, knees, etc. Extensive evaluation by engineering and medical professionals has indeed shown that the unique properties of UHMW-PE make it the best material available for these applications.
Ching-Tai Lue, Effects of Gamma Irradiation and Post Heat Treatments on the Structure an Mechanical Properties of Ultra High Molecular Weight Polyethylene (UHMW-PE) (June 1979) (M.S. thesis, *964 University of Lowell) at 52 (“Purpose of this Study”).
This disclosure, in the same reference that discloses the product having all of the claimed properties, explicitly or inherently, satisfies the law of anticipation. See In re Spada, 911 F.2d 705, 708 (Fed.Cir.1990) (to anticipate, all of the elements and limitations of the claim must be found in a single prior art reference). I therefore agree that the Board’s finding of anticipation is not in error, and join in affirming that claims 1-6 are invalid on this ground.

Claims 7-12: Obviousness

The Board held that none of the several prior art combinations showed or suggested the claim limitation that requires that the product is “annealed at a temperature greater than 25 °C and less than the melting point of the material, approximately 140 °C.” The Board found that there was no basis the specification or in the knowledge of the stilled artisan to expect that an annealing step should be performed to produce the observed and effective properties. The Board found that “the Examiner and Requester have not shown that, more likely than not, the skilled artisan would have recognized that the desired beneficial properties would be achieved at temperatures below 140 °C by optimizing these parameters.” 2014 WL 1729260 at *15.
Neither have my colleagues on this panel made such a showing or identified any source of such a showing. The Arrhenius equation of the relation between chemical reaction rate and temperature says nothing about generation or destruction of free radicals or cross-linking or abrasion resistance or any other characteristic of the process or the product. Heat-treatment of a polymeric product may indeed increase cross-linking, and it may also melt the product, which is inimical to cross-linking, and may also degrade and destroy the product. The premises by which the panel majority selects the patent’s temperature and time and reaction sequence are not shown or suggested in any reference.
The Lue reference shows heating the UHMWPE for 1 hour at 150 °C followed by either slow cooling or shock cooling. This heat treatment was performed to investigate its effects on both crystallinity and tensile properties of UHMWPE and allow for additional comparison between the irradiated UHMWPE and UHMWPE not subjected to irradiation. Lue performs this step above the melting point of the UHMWPE, which is inconsistent with the annealing process that strengthens the prosthetic product. The Howmedica patent illustrates annealing at 50 °C for 144 hours, well below he melting point of the UHMWPE. No application of the Arrhenius equation suggests that a prior art heating of a molten polymer at 150 °C for 1 hour renders obvious the annealing of a solid product for' 144 hours at 50 °C.
In this crowded field of scientific investigation, another scientist, Lawton, uses prolonged heating below the melting point of the UHMWPE to eliminate crystallinity and render the product amorphous. However, the Board correctly found no suggestion in the prior art to modify the Lue process by heating at the Lawton temperature range. Only perfect judicial hindsight renders it obvious to do so — although not even judicial hindsight can find a teaching or suggestion that these procedures should be combined to highly beneficial effect.
The Board correctly reasoned that a skilled artisan would not have expected or predicted to achieve “the particular recited properties without hindsight reliance on the annealing times and temperatures” taught by Howmedica. Id. The Board’s conclusion, reached on thorough analysis and sound scientific reasoning, was not contradicted by any evidence. Indeed, the panel majority’s holding that “[t]he *965 Board’s finding that a skilled artisan would not have reasonably expected that modifying Lue according to Lawton would generate UHMWPE with the recited properties lacks substantial evidence support” is unjustified. Maj. Op. 962. To the contrary, the Board in this Reexamination appears to have been exceedingly through in its treatment of all factual issues raised before it. I wish every Board decision was as clean and well-reasoned.
Substantial evidence “means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); see In re Morsa, 713 F.3d 104, 109 (Fed.Cir.2013). Such evidence surely exists in the Board’s thoughtful and considered findings.
I would affirm the Board’s ruling sustaining the validity of claims 7-12. I respectfully dissent from my colleagues’ reversal of the Board’s decision as to these claims.